[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
ARTICLE I THE DISSOLUTION OF THE MARRIAGE
It is found that all of the allegations in plaintiff's complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
ARTICLE II A SHORT HISTORY OF THE TRIAL OF THIS MATTER
The trial of this case began on November 2, 1999 at which time defendant was represented by counsel while plaintiff appeared pro se. The matter continued the following day, resuming again on December 15, 1999. CT Page 8482 Trial continued through December 16, 1999 when the case was advanced to February 1, 2000. On that date plaintiff informed the court she was unable to proceed because of a health problem. The court continued the matter to the school vacation period in order to accommodate the plaintiff. Plaintiff thereafter retained counsel and delay followed while counsel awaited a transcript of prior proceedings and familiarized himself with what had transpired during the preceding six months. Finally, on May 11, 2000, both parties and their counsel appeared in court, and this matter was finally and mercifully concluded.
ARTICLE III THE MARITAL ESTATE OF THE PARTIES
Plaintiff
1998 Nissan Sentra Value $12,000.00 — loan $ 7,500.00 Equity $ 4,500 Webster Bank 136 Amex I.R.A 14,473 Aetna Annuity (403(b) 152,993
*Teacher's Retirement Pension 247,992
*Edward Jones Account 32,609
*Furniture personal property ----
*U.Conn. Basketball tickets ----
TOTAL: $452,703
Defendant
A.G. Edwards 92,740 American Express 2,600 Fleet I.R.A. 92 Bank Accounts 1,184
*Furniture personal property ----
*Condo at 3 Cedarland Court, Cromwell, ---- CT (no equity) TOTAL: $ 96,616
Total Marital Estate: $549,319
Note:
Those items marked with an asterisk will be discussed separately in later articles.
ARTICLE IV. A REVIEW OF THE EVIDENCE AS IT RELATES TO SEC. 46b-81c CGS
CT Page 8483
A. General Background Information
The plaintiff wife, who is fifty-four years of age, and the defendant husband, who is fifty-seven years old, were married on August 14, 1966, thirty-three years ago. They have two children, a daughter and a son, both of whom have reached their majority. At the time the plaintiff was attending college in preparation for a teaching career, while defendant was employed by a law firm as an assistant.
Plaintiff received her B.A. degree from the University of Connecticut in 1968, a M.A. degree from St. Joseph College in 1982 and has obtained several credits toward a Ph.D. degree. She taught in the East Hartford public school system from 1968 to 1971, served all of her time as a housewife and mother from 1971 through 1977, served as a substitute teacher in the Newington school system until 1984 and from then until the present time has served as a teacher in the Hartford school system. Her most current financial affidavit indicates a gross weekly income from her employment of $1330 with a weekly net after the usual deductions of $932.
Defendant graduated from the University of Hartford in 1965 with a degree in accounting. He was associated with a large accounting firm from then until October 1991 when he began three and one-half years of employment as an accountant with American Express. In 1995 he opened his own office as an accountant but sold his practice in February, 1998 because of health and other reasons. His sole income at the present time is from a private disability policy and from the disability provisions of his social security. His current financial affidavit shows a weekly income of $1153 with a weekly net after the usual deductions of $1068. It is noted that $823 of this amount from his private health policy will terminate in eight years when he becomes sixty five.
B. The Health of the Parties
Both parties suffer from health problems of one sort or another, particularly of an emotional nature. Their symptoms, complaints and prognoses will now be related.
1. Plaintiff
When questioned concerning her health, plaintiff responded as follows: "I'm OK other than anxiety, high blood pressure and cholesterol." Plaintiff wept frequently and profusely during the course of the trial. On one occasion proceedings were suspended to permit plaintiff to be hospitalized at the Institute of Living. CT Page 8484
2. Defendant
Defendant's health problems are more numerous and deep seated than those of plaintiff. Dr. Bruce Rothchild, a psychiatrist, testified that he had treated defendant since November 1994 for bi-polar disorder, attention deficit disorder, pathological gambling and a personality disorder. He stated that in the past defendant suffered stress because of the death of his father and brother, that at one point he was no longer able to work and finally that, while he still suffers from this ailment it is not presently as severe as it was two years ago. Dr. Rothchild's prognosis relating to defendant's future employment was that, "I can't predict when this condition may improve so that he can return to work." He presently takes an antidepressant drug as well as lithium twice daily for his bipolar disorder.
Defendant's hospital record reveals a stay in Mount Sinai Hospital in January, 1998 with later care at the Institute of Living in April, 1998.
Defendant presented himself to the court as at times a dejected, unhappy individual.
C. Defendant's Gambling Problem
As was previously and briefly mentioned, defendant has in the recent past suffered from and been treated for a severe gambling problem. In defendant's words "I socially gambled for many years, but for a six month period in late 1997 and early 1998 it became in excess of social gambling. I left the marital home in January, 1998, went on a gambling binge and spent my time at Foxwoods and Mohegan Sun. I haven't gambled since May, 1998, am a member of "Gamblers Anonymous" and now see a psychologist every two weeks for this problem." While on this subject it must be noted that during this period defendant's lack of attention to his accounting clients resulted in the suspension of his license to practice as a C.P.A. by the State of Connecticut. Defendant sold his accounting practice in February, 1998. To conclude this unhappy topic, the exact amount of marital funds lost to gambling is uncertain, but defendant admits that they amounted to $5707 during a four month period in early 1998.
D. Fault
A review of the testimony of each of the parties on this factor is helpful in assessing responsibility for the breakdown of the marriage. A brief account follows: CT Page 8485
1. Plaintiff
Plaintiff stated that the single most important reason for the failure of the marriage was defendant's excessive gambling which resulted in the loss of his accounting practice. She mentioned briefly that defendant had driven off and left her on the Canadian border in August, 1969, returning an hour later to pick her up, had broken a bone in her foot on New Year's Eve, 1972, and that he had slapped her across the face in 1996. Her more detailed complaints concerned defendant's conduct in early 1998 when he would disappear for three or four days at a time, and that "while on those binges I didn't know whether he was dead or alive." During this period he would say such things as "you are stupid, an idiot, a terrible wife." She concluded by stating "He tried to emotionally destroy me."
2. Defendant
Defendant testified to a litany of complaints as follows: "In 1994 or 1995 she demanded separate bedrooms. I was told I had nothing physically wrong with me. She wanted to be by herself. She became involved with the "Make a Wish" group but did not want me to join her. She didn't have the ability to console me in times of need such as when my father and brother died. I went to the casino to have quiet time. She always said she wanted a divorce. Every little thing bothered her. It went on and on. Communication the last four years was limited. I spent more and more time in the office. This went on day after day. We did go to the basketball games together." In response to the allegations of physical abuse he stated, "I wanted space. She got in my face. She overstates things."
The court concludes after weighing all of the evidence that the defendant is responsible for the breakdown of the marriage.
E. Other Factors
The parties are on the same level insofar as their vocational skills, liabilities, needs and opportunity for the future acquisition of capital assets and income. Defendant's health has shown some improvement over the past year or two, but he does not appear ready at the present time to resume work in the field of accounting. Plaintiff has contributed more than defendant in the acquisition, preservation and appreciation in value of the marital estate.
CONCLUSION
Having carefully reviewed all of the evidence as it relates to Section46b-81c C.G.S., and having given particular weight to such dominating factors as the length of the marriage, the causes for its breakdown, the CT Page 8486 relative health of the parties and their contributions to the marital estate, this court orders that the marital estate of the parties, with the exception of those items marked with an asterisk, be divided as follows:
Plaintiff 58 percent
Defendant 42 percent
ARTICLE V THE DISTRIBUTION OF THE MARITAL ESTATE IN ACCORDANCE WITH THE FINDINGS MADE IN ARTICLE IV (SUPRA) (WITH THE EXCEPTION OF THOSE ITEMS MARKED WITH AN ASTERISK)
 Total marital estate (minus asterisk) $ 268,718 Plaintiff's share 58% 155,856 Defendant's share 42% 112,862
Plaintiff shall take and have:
1998 Nissan Sentra equity $ 4,500 Webster Bank 136 Amex I.R.A 14,473 Aetna Annuity (403(b) 152,993
Total $ 172,102 *- less amount owed to defendant -16,246
$ 155,856
Defendant shall take and have:
A.G. Edwards $ 92,740 American Express 2,600 Fleet I.R.A. 92 Bank Accounts 1,184
Amount owed by plaintiff* + 16,246
Total $ 112,862